Anderson, J.
This is an action of debt brought in the Circuit court of New Kent county, by the plaintiff in error, against the defendant in error and another, surviving obligors, on a bond executed by them as securities, and Jno. D. Christian, as principal, to the plaintiff, for the sum of $1,420.63, with interest from the 28th day of January 1861. The bond bears date the day of January 1864. The Circuit court gave judgment for the whole amount of the bond, vrith interest as aforesaid and costs : which judgment was reversed by the District court, and judgment rendered for the plaintiff for $79.28, the scaled value of the note as of its date ; and for the defendant, for his costs in both courts. And the cause comes to us upon a superseoteas to the judgment of the District court. The main question is, was it a contract for Confederate money ?
By the act of Assembly, passed February 28th, 1867, either partyjs authorized, if the contract was entered into between the 1st of January 1862, and the 10th of April 1865, to show by parol or other relevant evidence, ■ *726 what the true understanding and agreement, either exPress or implied, was as to the kind of currency with which it was to be performed, or with reference to what kind of currency, as a standard of value, the contract was ma<3e and entered into.
The defendant offered no evidence to show that it was Confederate currency. But the fact of the great depreciation of that currency, at the date of said obligation, and that it filled the channels of commerce, and was the only medium of exchange in circulation in this State, is a fact of public history, and may be judicially known, from which .the inference may be drawn that it was the understanding of the parties that payment should be made in that currency. The defendant also relied upon the act of Assembly, passed October 20th, 1863, which declares in effect that all contracts for the payment of money, made subsequent to that date, shall be deemed to be for the payment in such currency as shall be receivable in payments to this State at the time the contract is payable, “ unless this intendment is expressly excluded. ”
The plaintiff contends that this act has no force or validity as a law. I do not concur in that opinion. It was the act of a Legislature of the State, which had the power to enforce all its enactments. It had the force and effect of a law of the State, and was as obligatory on the citizens of the State as is any law passed by subsequent legislatures. But it was subject to alteration, amendment or repeal.
This act was evidently designed to change the common law presumption, that a contract to pay dollars is a contract to pay specie. In the then abnormal state of the country and condition of the currency, this presumption of the common law was well known to be contrary to the fact; and the Legislature designed to reverse the presumption of law, and make it conform to the presumption of fact. But they gave to their declaration *727 only a prospective operation. It does not affect the past. But the act of 1867 does. It is retrospective in its operation ; and not unconstitutional on that ground. A law is not unconstitutional because it is retroactive.
It was perfectly competent for a subsequent Legislature to repeal the act of 1863. And when the provisions of a subsequent act of the Legislature are in conflict with a previous act, so far as that conflict exists the subsequent act prevails, and the provisions of the previous act in conflict, are by implication annulled. The act of 1867 declares, section 1, “ that in any action or suit or other proceeding, for the enforcement of any contract, express or implied, made or entered into between the 1st day of January 1862, and the 10th day of April 1865, it shall be lawful for either party to show by parol, or other relevant testimony, what was the true understanding and agreement of the parties thereto, either express or to be implied, in respect to the kind of currency in which the same was to be fulfilled or performed,” &c. This enactment, it -seems to me, does in effect forbid any presumption of law, either of common law or statute, as to the kind of currency in which any contract which was made within the period designated, is to be performed or fulfilled; and that any presumption that may be made, must depend upon the proofs in the cause, including all implications of fact, and is only a presumption of fact. And the statute authorizes proofs to be given by parol, •or any relevant testimony, by either party. The obvious design and operation of the act of 1867, is to ascertain and enforce the actual contract between the parties; to •do which it in effect annuls the presumption of law as to "the kind of currency in which the contract is to be solved, whether common law or statutory. This being so, the act of 1863, if construed to prescribe a presumption of 'Ian), is, to that extent, virtually repealed by the act of 7L867, and evidence is admissible to repel the presumption of the statute. But only to that extent is it in con *728 flict with-the act of 1867. In the absence of proof to tbe contrary, contracts made during the war, and subsequent to the date of said act of 1863, and by force of said act would be construed in accordance with the presumption of the statute. iSTor can the act of 1867, as thus construed, be regarded as coming within the prohibition of the constitution, State or Federal, in relation to laws which impair the obligation of contracts ; inasmuch as in its evident design and operation, it provides for the ascertainment and enforcement of the real contract between the parties.
The act of 1867 must therefore govern this case. And whilst the presumption does arise from the fact that Confederate currency was the only circulating medium at the date of the bond in question, that it was payable in that currency, it is competent for the plaintiff to rebut that presumption by parol, or other relevant evidence, and to show that such was not the true understanding and agreement between the parties.
To repel the presumption that it was a Confederate contract, the plaintiff relies upon the bond itself, which shows upon its face that it was given for a pre-existing debt. It shows that it was a debt existing as far back as the 28th of January 1861 ; for the obligors bind themselves to pay interest from that date. A man may owe a debt which is not bearing interest; but he can hardly be held to pay interest on a debt which he does not owe. It is> therefore, a very plain inference from the face of the bond, that the debt for which it was given was an existing debt as far back as January 1861, before the war commenced, or a Confederate currency had any existence. The presumption that it was a Confederate debt, and to be paid in Confederate currency, is therefore repelled by the face of the bond itself.
But the plaintiff introduced other evidence, to wit: a letter from Jno. D. Christian, the principal obligor, bearing date January 22nd, 1864, with its inclosures, *729 addressed to Col. James M. Wilcox. This letter shows that said Christian had sold his courthouse property to Charles Palmer for $20,000, and that he could not make Palmer a title to it unless the plaintiff’ would release a trust deed which he held on it, executed in 1857, to secure a debt which had been reduced to $1,420.63, on the 28th of January 1861: which the plaintiff had agreed to do, if he (Christiau) gave bond and security for the debt, and a deed of trust on other lands. The letter also shows, that it was well understood by the writer, that the plaintiff could not take Confederate money in payment of the debt; and his acceding to the proposed arrangement was regarded by Christian as an act of kindness to him. The design of the letter was to get his friend, Col. Wilcox, to have the proposed arrangement effected. He encloses him the bond, executed by himself and securities, for $1,420.63, with interest from the 28th of January 1861, and a statement, signed by himself, showing that that was the balance due on that day of the debt, which had been owing from a date anterior to the 1st of October 1857, and the amount of interest which was then due, which he was desirous of paying in Confederate money, and sent him a check to pay it, if the plaintiff would receive it. If he would, to credit it on the bond. But instructed him, that although he greatly preferred to pay it, not to insist on it. And if it was not received, to destroy the check. He also enclosed a deed of trust, conveying' other lands, to be delivered to the plaiutiff, to secure this debt, the description of which, in the deed, corresponds with the bond on which this suit is founded, and shows that the day of the month, in the date of the bond, which is blank, was intended to he the first of January. He also inclosed to him the deed of release, which he desired him to get the plaintiff' to execute. And he expresses the hope that the plaintiff’ will accom *730 modate him, and asks his friends Wilcox and Mr. Geo, Walker to intercede for him.
This letter, and the papers accompanying it, show the declarations, admissions, and acts of the principal obligor, connected with the delivery of the bond upon which the suit is founded; which had been previously executed by him and his securities, and the delivery of the deed of trust, in consideration of which he received the plaintiff’s release, not of the debt, but of the lien upon the courthouse lands. It was not a novation of the debt; but only a change of security. Even the interest accruing after the 28th of January 1861, is not incorporated with the principal, but the status of the debt is precisely the same, after this bond is given, that it was in January 1861, only that a new security is accepted, and the old one surrendered, for the accommodation and benefit of the principal obligor alone. Was Ms (the principal obligor’s) obligation as to this debt changed by this transaction ? If it was his obligation originally, to pay it in gold, has that obligation been changed by these transactions; so that he can discharge that obligation by paying a gold debt of $1,420.63, with interest thereon from the 28th of January 1861, in a depreciated currency, including interest, of the value of only $79.28 ? Is that a fulfilment of the obligation of John D. Christiau? Was it the true understanding and agreement between him and the plaintiff', that the latter was to receive such a worthless paper in discharge of this gold debt? Was it the said Christian’s understanding, when he knew and acknowledged that the plaintiff could not receive payment in Confederate money, and would not even insist upon the payment of the interest in Confederate money ? Was it the understanding of the plaintiff, when he accepted that bond, that it was to be paid in Confederate money ? When he was unwilling, and the presumption from the evidence is, refused, to receive the interest in Confederate *731 money, that he accepted a bond which he understood to require him to receive both interest and principal in that ■worthless currency ? It is only to ask the question to see the absurdity of such a pretension.
But can it be said that, though it was the obligation of the principal obligor to pay this debt in specie, the obligation of the securities ivas different. If we could regard these joint obligors, in this action at law, not as joint obligors, but only as securities for the principal obligor, what is their undertaking to the obligee ? Is it not, that the principal obligor shall fulfil his obligation to the obligee, and that, if he does not, they will do it for him? If so, their obligation to the plaintiff cannot be les3 than that of the principal obligor ; it is precisely the same. But suppose that they could be regarded as having a separate contract with the plaintiff and in executing that bond could have come under a separate and different obligation from that of the principal obligor, they could not entitle themselves to discharge their obligation by paying the value of the bond in Confederate money, as of the date of the bond, by showing that they understood the debt was to be paid in that currency. They must show also, that such was the understanding •of the plaintiff. The act of Assembly requires it to be shown that it was the true understanding, and agreement of the parties to the contract. But it does not appear that they so understood it. It is very clear, as we have seen, that the plaintiff did not so understand if. And as we have also seen, there is enough on the face of the bond which they executed to repel the presumption that they so understood it.
But they cannot sever their responsibility in this action, from that of the principal obligor. They are jointly bound with him and jointly liable to the plaintiff. And the acts and admissions of one joint obligor are binding on all. The general doctrine is, as laid down by Green-leaf, that the declarations of a party to the record, or of *732 one identified in interest with him, are as against such party* admissible in evidence. 1 Greenl. Evi., § 171. As to the admissions of persons who are not parties to the record, the law looks chiefly to the real parties in interest, and gives to their admissions the same weight as though they were parties to the record. Ibid § 180; also § 170; 1 Philips on Ev. p. 491, marg. 406, top.
I am of opinion, therefore, that the Circuit court rightly overruled the objections to the introduction of the evidence, which is the ground of the first bill of exceptions ; and did not err in admitting the same as evidence. I am also of opinion that, upon the facts certified, the Circuit court did not err in overruling the motion for a new trial. I am further of opinion, that the District Court erred in reversing the judgment of tho Circuit court, and in the judgment which it rendered. I am therefore, of opinion to reverse the judgment of the-District court, and to affirm the judgment of the Circuit court.
Staples, J., concurred in the maiu with Anderson, J.
Moncure, P., concurred in the opinion.
Judgment of tub District court reversed.